UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| TONY L. LOVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:19-cv-00550-JPH-MG |
| | ) | |
| CHRISTOPHER NICHOLSON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**Order Denying Motion for Summary Judgment**

Tony Lionel Love is an inmate of the Indiana Department of Correction ("IDOC") who at all times relevant to this case was incarcerated at the Wabash Valley Correctional Facility ("WVCF"). Mr. Love brings his claims under 42 U.S.C. § 1983 alleging that Defendants violated their constitutional obligation to provide him with safe and sanitary conditions of confinement when they knowingly made him reside in a cell infested with black mold and failed to take reasonable steps to remediate the situation. The defendants seek summary judgment. Dkt. [44]. For the reasons stated below, their motion for summary judgment is **denied**.

**I.     Summary Judgment Standard**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court views the facts in the light most favorable to the non-moving party and draws all reasonable

inferences in the non-movant's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018).

**II.   Facts**

Mr. Love was transferred to SCU-B-104 ("Cell 104") at WVCF on August 13, 2019. Defendants' Statement of Material Facts Not in Dispute ("Defendants' Undisputed Material Facts"), dkt. 45 at 2 ¶ 1. For about three months before the transfer, Cell 104 was occupied by inmate Michael Walker. Michael Walker Affidavit ("Walker Aff."), dkt. 51-1 at 31. Mr. Walker observed black mold in Cell 104 while he lived there and complained about it. *Id.* Sergeant Cobb tried to clean the black mold twice, but he was not successful. *Id.* Mr. Walker was moved to another cell and Mr. Love was placed in Cell 104.

When Mr. Love moved into Cell 104, he saw black mold on the walls and ceiling. Defendants' Undisputed Material Facts, dkt. 45 at 2 ¶ 2. Mr. Love asked for the cell to be cleaned on multiple occasions. *Id*. On September 3, 2019, defendant Lieutenant Christopher Nicholson emailed the WVCF grievance specialist and stated that he could "confirm black stains that can be wiped off that keep reappearing" in Cell 104 despite the cell having been cleaned several times. Nicholson Email, dkt. 51-1 at 5; Answer, dkt. 15 ¶ 1(d). In his response to a grievance filed by Mr. Love, he also admitted (in a statement signed under penalty of perjury) that there was a "black substance" in the cell but that he could not confirm whether the substance was mold. Grievance Response, dkt. 51-1 at 3. Lieutenant Nicholson gave Mr. Love cleaning supplies. *Id.*

Unsatisfied with this response, Mr. Love wrote to the health department. Defendants' Undisputed Material Facts, dkt. 45 at 2 ¶ 3; Hendrix Email to Wellington, Snyder, and Nicholson, dkt. 51-1 at 6. Following Mr. Love's letter to the health department, on September 10, 2019, Lieutenant Nicholson came to Cell 104 with Unit Team Manager Snyder, Sergeant Cobb, Jay

Hendrix, and defendant Thomas Wellington, who is the American Correctional Association ("ACA") manager at WVCF. Dkt. 44-1 ¶ 2; Hendrix Email, dkt. 51-1 at 6.

After he moved into Cell 104, Mr. Love submitted multiple health care request forms complaining of symptoms that he believed were related to the black mold in his cell. Health Care Request Forms, dkt. 51-1 at 22–24. He complained that he was experiencing breathing problems, burning eyes, and nose bleeds. *Id*. He stated that he had been using his asthma inhaler more frequently. *Id.* at 23. Mr. Love resided in Cell 104 for more than 6 months. Location History, *id.* at 30 (showing that, as of Feb. 28, 2020, Mr. Love was still assigned to Cell 104).

In support of their motion for summary judgment, Defendants submitted a declaration from Mr. Wellington. Dkt. 44-1. Mr. Wellington states that he visited Mr. Love's cell with Lieutenant Nicholson, Mr. Snyder, and Mr. Hendrix on September 10, 2019, and—upon inspection—observed no evidence of mold. *Id.* ¶¶ 4–5. He also notes that the cell had not been properly cleaned by Mr. Love, stating that inspection of the cell revealed, among other things, the presence of Styrofoam cups containing unused cleaning chemicals, unused food trays, covered ventilation ducts, and unidentified substances on the walls (including a homemade adhesive potentially containing toothpaste). *Id.* ¶¶ 6–9. He states that Mr. Love had marked the wall to identify possible black mold, but he did not believe the matter to be black mold. *Id.* ¶ 10. Finally, he states that Mr. Love was given cleaning supplies and told that it was Mr. Love's responsibility to clean the cell. *Id.* ¶ 11.

In his response, Mr. Love contends that portions of Mr. Wellington's declaration describe Cell 107, not Cell 104. Dkt. 51 at 3–4. He also submits an email from Mr. Hendrix to, among others, Mr. Wellington and Lieutenant Nicholson describing the inspection of Cells 104 and 107 the group performed on September 10, 2019. Hendrix Email, dkt. 51-1 at 6. In the email, Mr.

Hendrix identifies the Styrofoam cups, homemade adhesive/toothpaste, and unreturned food trays as being present in Cell 107, not Cell 104. *Id*. Thus, it appears that the observations set forth in paragraphs 7 and 8 of Mr. Wellington's declaration were of Cell 107 rather than Cell 104.[1] Regardless, Mr. Love has contested their accuracy and submitted evidence supporting his position, so the Court must take his version as true for purposes of summary judgment.

### III. Discussion

The defendants contend that summary judgment should be granted in their favor because they did not violate Mr. Love's constitutional rights and, even if they did, they are entitled to qualified immunity. Dkt. 45.

#### A. Eighth Amendment Violation

Mr. Love's conditions-of-confinement claim is based on the Eighth Amendment.[2] *See* dkt. 7 (screening order). "A prisoner challenging conditions of confinement must first show that the conditions were sufficiently serious as an objective matter, meaning that they denied the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety." *Thomas v. Blackard*, 2 F.4th 716, 720 (7th Cir. 2021) (cleaned up). He also "must prove that the prison officials acted with deliberate indifference—that they knew of and disregarded this excessive risk of harm to the inmate." *Id.*

---

[1] Reading the Declaration in context with other evidentiary materials in the record, the Court concludes that the misstatements are the result of scrivener's errors rather than an intentional falsehood designed to mislead the Court. Moreover, Mr. Wellington's email states that no mold was found during the inspections. Dkt. 51-1, at 6.

[2] In his summary-judgment response, Mr. Love raises a Fourteenth Amendment equal protection argument, contending that he was treated differently because of his race. Dkt. 51 at 7–8. Mr. Love cannot use his summary-judgment response to amend his complaint, so the Court disregards this argument. *See Anderson v. Donahoe,* 699 F.3d 989, 997 (7th Cir. 2012) ("[A] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.") (cleaned up).

As to the objective prong, Defendants contend that Mr. Love was not subjected to an excessive risk to his health and safety. Defendants' argument is based on Mr. Wellington's declaration stating that he did not observe mold in Cell 104 when he inspected it on September 10, 2019, and that Mr. Love may have contributed to the unsanitary conditions in the cell by failing to keep it clean. Dkt. 45 at 5–6.[3] Construing the evidence in the light most favorable to Mr. Love, a reasonable jury could conclude that there was black mold in Cell 104 while Mr. Love lived there and that the black mold created an unacceptable risk to Mr. Love's health. *See* Walker Aff., dkt. 51-1 at 31 (inmate Walker stating in affidavit that there was black mold in Cell 104 up until the day Mr. Love moved in and that the cell was not properly cleaned before Mr. Love moved in); Defendant's Undisputed Material Facts, dkt. 45 at 2 ¶ 2 (stating as an undisputed material fact that Mr. Love believed the cell was covered with mold when he moved in); Nicholson Email, dkt. 51-1 at 5 (email from Lieutenant Nicholson stating that the walls of Mr. Love's cell had a black stain that could be wiped off but kept reappearing despite being cleaned several times); Health Care Request Forms, dkt. 51-1 at 22–24 (detailing health problems Mr. Love experienced after he moved into Cell 104). Mr. Love has also submitted evidence suggesting that Cell 104 had a persistent mold problem before he moved into the cell. *See* Walker Aff., dkt. 51-1 at 31. Thus, a reasonable jury could conclude that Mr. Love was not responsible for the health risk associated with Cell 104.

As to the subjective prong, Lieutenant Nicholson and Major Russell have not designated evidence showing that they were not aware of the risk presented by the mold or that they took appropriate remedial action. Relying on Mr. Wellington's affidavit, they argue that WVCF's

---

[3] The defendants do not contend that Mr. Love's claim would fail at the objective prong if there really were black mold in the cell, as Mr. Love alleges. Regardless, any such argument would fail. The record includes evidence supporting the inference that the black mold in Cell 104 caused him significant health problems during the year he lived there. *See* dkt. 51 at 5.

5

response to Mr. Love's complaints was reasonable because Mr. Wellington did not detect mold when he visited the cell on September 10, 2019, and because Mr. Love was provided with cleaning supplies within a month of his initial complaint. *Id.* at 6–7. But there is no designated evidence showing that the cleaning supplies provided to Mr. Love were appropriate for removing black mold and as explained above, Mr. Love has designated evidence from which a reasonable jury could find that there was black mold in his cell.

Mr. Wellington also is not entitled to summary judgment on the question of deliberate indifference. Although he states in his declaration that he did not believe that Cell 104 contained black mold on September 10, 2019, dkt. 44-1, a reasonable jury could find from Mr. Love's designated evidence that:

- Mr. Wellington knew of complaints about black mold in Cell 104;
- a black substance kept reappearing on the walls even after Lieutenant Nicholson had the cell cleaned multiple times;
- Mr. Wellington knew that the material he observed on Mr. Love's cell walls was black mold—or that there was a substantial risk it was black mold—and that it needed to be remediated;
- Mr. Wellington gave Mr. Love more cleaning supplies and told him to clean his cell even though Mr. Wellington knew that continued surface cleaning would not fix the black mold problem;
- other reasonable alternatives were available—such as moving Mr. Love, as was done when inmate Walker complained about black mold in Cell 104. Dkt. 51-1 at 3.

Based on these findings, a reasonable jury could conclude that Mr. Wellington was deliberately indifferent to the risk Mr. Love faced from ongoing exposure to black mold. *See Board*

*v. Farnham*, 394 F.3d 469, 486 (7th Cir. 2005) (holding that the defendants could not avoid liability for exposure to various environmental contaminants—including black mold—by ordering the "flimsy, non-productive band-aid procedure of merely vacuuming the grates" when they knew that procedure would be ineffective).

### B. Qualified Immunity

The defendants also argue that, even if they violated Mr. Love's constitutional rights, they are entitled to qualified immunity because they acted reasonably in response to learning of the mold problem from Mr. Love's complaints. Dkt. 45. Defendants' qualified immunity argument relies on disputed issues of material fact—specifically, the presence of black mold in Cell 104 and Defendants' knowledge of that black mold. Accordingly, the Court cannot resolve the qualified-immunity issue at summary judgment.[4]

### III. Conclusion

For the reasons stated above, the defendants' motion for summary judgment, dkt. [44], is **denied**. Given this decision and Mr. Love's previous requests for assistance with the recruitment of counsel, the Court will attempt to recruit counsel to represent him during the next phase of this case. The Court further **discharges** the show cause order, dkt. 43, based on Mr. Love's response, dkt. 48.

---

[4] The Court does not understand the defendants to be arguing that they would be entitled to qualified immunity if Mr. Love could show that Cell 104 was contaminated with black mold and they knew that the cell contained black mold. To the extent they do, their argument fails. *See Johnson v. Coffee*, No. 1:19-cv-03313-SEB-TAB, 2021 WL 1814927, at *6 (S.D. Ind. May 5, 2021) (denying motion for summary judgment as to question of qualified immunity where there was evidence that the plaintiff was constantly exposed to black mold for several months, that the defendants were aware of this black mold exposure, and that they engaged in procedures that they knew were ineffective despite having the authority to order effective and reasonable alternatives); *see also Board*, 394 F.3d at 473, 486–87 (affirming denial of qualified immunity at summary-judgment stage where there was evidence that the plaintiffs were exposed to various environmental contaminants—including black mold—for 126 days; noting that the right to healthy and adequate ventilation has been clearly established for some time).

**SO ORDERED.**

Date: 1/28/2022

                                               James Patrick Hanlon
                                             United States District Judge
                                             Southern District of Indiana

Distribution:

TONY L. LOVE
127260
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

J. Derek Atwood
INDIANA ATTORNEY GENERAL
derek.atwood@atg.in.gov